IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE CARDONA, : CIVIL NO. 4:CV-10-2269
    Petitioner, :
                                     : (Judge Munley)
v. :
                                     :
B.A. BLEDSOE, Warden, :
    Respondent :

## MEMORANDUM

On November 2, 2010, Petitioner Jose Cardona ("Cardona"), a federal inmate presently incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) The case initially was assigned to the Honorable James F. McClure, Junior. Cardona alleges that his right to due process was violated in disciplinary proceedings after which he was found guilty by the Disciplinary Hearing Officer ("DHO") and sanctioned, inter alia, with a loss of good conduct time.

Service of the petition was directed by Order dated November 10, 2010. On December 1, 2010, respondent filed a response (Doc. 4) and supporting exhibits[1] (Doc. 4-1).

---

[1] Respondent submitted the Declaration of Debi Weber, Paralegal Specialist at USP Lewisburg (Doc. 4-1 at 3). Attached to Weber's Declaration are copies of Cardona's Sentence Monitoring Computation Data (id. at 4); a copy of the Incident Report for the March 15, 2010 incident that relates to the instant petition (id. at 6-7); a notice of the hearing before the DHO (id. at 8); the DHO's Report for the May 11, 2010 hearing (id. at 9-13); a copy of Inmate Rights at Discipline Hearing (id. at 14); copies of staff memoranda relating to the March 15, 2010 incident involving Cardona (id. at 15-20); copies of Health Services Clinical Encounters for Cardona for his medical examination following the March 15, 2010 incident (id. at 21-24); and copies of photographs of inmates Cardona and Manriquez-Ojeda

On December 7, 2010, Cardona filed his reply brief. (Doc. 5.) On December 22, 2010, following the death of Judge McClure, this case was reassigned to the undersigned. The petition is fully briefed and ripe for disposition. For the reasons set forth below, the petition will be denied. In addition, Cardona's motions to supplement his petition (Docs. 6, 7), which were filed after the petition became ripe, will be denied for the reasons discussed below.

## I. Statement of Facts

Cardona currently is serving a 480 month sentence for Possession with Intent to Distribute Marijuana/Heroin that was imposed by the United States District Court for the Western District of Texas. (Doc. 4-1 at 4[2], Sentence Monitoring Computation Data.) His current projected release date is April 2, 2037, via good conduct time release. (Id.)

Officer Anderson, the reporting employee, described the incident involving Cardona and inmate Manriquez-Ojeda that occurred at approximately 5:34 p.m. on March 15, 2010 as follows:

> On the above date and time we received inmate Cardona [inmate number omitted] from R&D. I put inmate Cardona in cell 205 occupied by inmate Manriquez [inmate number omitted]. As soon as I removed both sets of restraints inmate Cardona struck inmate Manriquez with a closed fist to the head. Inmate Manriquez then swung wildly with closed fists hitting inmate Cardona. I then informed Lt. Flemming who was at the end of my range. He then called for assistance. Lt. Flemming then had to pepper spray the inmates to break up the fight.

---

taken after the March 15, 2010 incident (id. at 25).

[2]Throughout this memorandum, citations to page numbers of documents filed to the docket in this action are to the page numbers generated by the CM/ECF Filing System.

(Doc. 4-1 at 6, 3/15/10 Incident Report, ¶ 11.) In a memorandum describing the incident, Lieutenant Fleming verifies that, after staff placed Cardona in cell 205 on D Block at the above date and time and removed his restraints, Cardona and Manriquez-Ojeda "approached each other in an aggressive manner and began throwing closed fists to their upper body and facial areas." (Id. at 16.) He further verifies that responding staff arrived and ordered both inmates to separate with negative results. (Id.) Fleming states that, after he gave a second order to separate and submit to restraints with negative results, he administered a single two (2) second burst of pepper spray. (Id.) He states that both inmates then separated and submitted to restraints, and subsequently were removed from the cell, medically assessed, and decontaminated without further incident. (Id.) Fleming verifies that neither inmate sustained injuries, and no staff injuries were reported. (Id.)

On March 16, 2010, Cardona was issued Incident Report 1991132 charging him with the prohibited act of Fighting with Another Person in violation of Code 201. (Id. at 6 ¶¶ 10, 15.) On the same date, he was provided with a Notice of Discipline Hearing before the DHO and a Notice of Inmate Rights at Discipline Hearing Form. (Id. at 8, Notice of Discipline Hearing before the DHO, at 14, Notice of Inmate Rights at Discipline Hearing.)

On May 11, 2010, Cardona appeared for a hearing before the DHO. (Id. at 9 § I. B.) At the outset of the hearing, Cardona acknowledged that he understood his rights before the DHO and was ready to proceed with the hearing. (Id. § III. B.) Although Cardona requested that Lieutenant Fleming appear as a staff representative in his case, the DHO advised

Cardona that Fleming could not be his staff representative due to a conflict of interest inasmuch as Fleming was present at the time of the incident. (Id. § II. C.) Cardona was advised of his option to postpone the hearing to obtain another staff representative, but he stated that he wished to waive his right to staff representation in his case and proceed with the hearing. (Id.) Cardona was not able to sign or initial the form documenting the waiver of his right to staff representation in this case because his hands were restrained behind his back during the hearing. (Id.)

The DHO Report reflects that, during the hearing, Cardona was given the opportunity to provide a statement, which he chose to do. (Id. § III. B.) Specifically, Cardona testified that Section 11 of the incident report is inaccurate and denied striking inmate Manriquez-Ojeda first during the incident. (Id.) Cardona testified that Manirquez-Ojeda attacked him, and he was "simply trying to keep from being assaulted." (Id.) He testified that he and Manriquez-Ojeda should not have been placed in a cell together and that the reporting officer "threatened him with corporal punishment," and informed Cardona that if he did not go into the cell with Manriquez-Ojeda that he would be "hog-tied" or placed in four-point restraints. (Id.) Cardona testified that Lieutenant Fleming spoke with him, and convinced him to go into the cell with Manriquez-Ojeda, and that, if staff had not threatened him with "corporal punishment", he would not have entered the cell. (Id.) The DHO asked Cardona why he and Manriquez-Ojeda should not have been placed in the same cell, and Cardona declined to provide a specific reason, but instead continued to make general statements that the two inmates "just should not have been placed in the same cell together." (Id.)

Cardona did not present any documentary evidence. (Id.) Cardona requested that Officer Anderson, the reporting officer, be called as a witness, but the DHO declined to do so on the basis that Anderson is an adverse witness, and the DHO determined that Anderson's knowledge of the incident had been adequately documented in the incident report. (Id. at 10 ¶ C. 3.)

The DHO determined that Cardona committed the prohibited act of Fighting.[3] (Id. at 11 § V.) The DHO specified that the finding was based upon the eyewitness written account of the reporting officer; Lieutenant Fleming's March 15, 2010 memorandum, in which he states that, upon his arrival, he observed Cardona and Manriquez-Ojeda "throwing closed fists to each other's upper body and facial areas"; Officer Rodgers' March 15, 2010 memorandum in which he states that, upon his arrival, he observed Cardona and Manriquez-Ojeda fighting inside of the cell; and the testimony of Cardona, in which he alleged that he was "defending himself" during the incident after being attacked by Manriquez-Ojeda, and that staff should not have attempted to place him and Manriquez-Ojeda in a cell together. (Id.) The DHO specified that he gave the greater weight of the evidence in this case to the eyewitness written account of the reporting officer, and the memoranda of Fleming and Rodgers, and found Cardona's testimony that he was "simply defending himself" to be less credible. (Id.) The DHO also stated that he considered Cardona's testimony that he was

---

[3] According to a memorandum from DHO Chambers dated May 12, 2010, Manriquez-Ojeda also appeared before the DHO to answer to the charge of Fighting and was found guilty as charged. (Doc. 4-1 at 15, 5/12/10 Mem.)

"forced" into the cell with Manriquez-Ojeda by staff after allegedly being threatened with "corporal punishment" if he did not go into the cell, but did not find this testimony to be credible, and explained his reasons for reaching that conclusion. (Id.)

The DHO sanctioned Cardona with the loss of twenty-seven (27) days of good conduct time; disciplinary segregation for thirty (30) days; the loss of commissary privileges for ninety (90) days; and the loss of visiting privileges for ninety (90) days. (Id. at 12 § VI.)

## II. Discussion

### A. Cardona's Petition for Writ of Habeas Corpus

The Fourteenth Amendment of the United States Constitution provides in pertinent part as follows: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). Accordingly, "[h]abeas corpus relief is available to a prisoner who has been sanctioned in violation of due process to a loss of good conduct time." Robinson v. Warden, 250 Fed. Appx. 462, 464 (3d Cir. 2007).

In Wolff, where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker. 418 U.S. at 563-73.

In particular, the Court recognized that "prison disciplinary proceedings are not part of

a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Nonetheless, the Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Id. at 563-71. The Court set forth the following five requirements of due process in a prison disciplinary proceeding: **(1)** the right to appear before an impartial decision-making body; **(2)** twenty-four hour advance written notice of the charges; **(3)** an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; **(4)** assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and **(5)** a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.

Where the due process requirements of Wolff are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision to revoke good time credits. Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Young, 926 F.2d at 1402-03 (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Under Hill, judicial review of a prison disciplinary decision is

limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.17(f) (requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence).

In the instant case, it is apparent upon review of the record that Cardona was afforded each of the due process protections required by Wolff in connection with the disciplinary proceedings at issue. Specifically, he received the opportunity to appear before a DHO, and in fact did so at the hearing on May 11, 2010. He also was provided with written notice of the charges against him in the incident report and notice of his DHO hearing, which were delivered to him on March 16, 2010, thus providing him with more than twenty-four (24) hours notice before his disciplinary hearing.

Cardona's argument in his reply brief that his right to due process was violated because he was denied the right to call and question Officer Anderson and Lieutenant Fleming as witnesses lacks merit. (See Doc. 5 at 1-3.) Cardona was afforded the opportunity to call witnesses and to present documentary evidence, and although the DHO declined to call Officer Anderson, the witness Cardona requested, he explained in his report that he did so because Officer Anderson is an adverse witness, and because, in accordance with his authority under 28 C.F.R. § 541.17(c), he determined that Anderson's knowledge of the incident was adequately

documented in the incident report.[4] With respect to Lieutenant Fleming, while the DHO declined Cardona's request to allow Lieutenant Fleming to act as his representative at hearing because Fleming, who was present at the time of the incident, would be prohibited from doing so pursuant to 28 C.F.R. § 541.17(b)[5], Cardona was given the option to postpone the hearing to obtain another staff representative, and ultimately chose to waive his right to staff representation and proceed with the DHO hearing. To the extent that Cardona suggests in his reply brief that his right to due process was violated because Fleming was not called as a witness, Cardona did not request prior to hearing that Fleming be called as a witness, but instead only requested Anderson. Moreover, even if Cardona made such a request, the DHO properly would have declined it on the same basis that he denied Cardona's request to have Anderson as a witness, namely that Fleming is an adverse witness and his knowledge of the incident was adequately summarized in his memorandum that was submitted to the DHO (see Doc. 4-1 at 16). With regard to Cardona's contention in his reply brief that he has a right under § 541.17(c) to call the writer of the incident report to testify about "additional information" that is not mentioned in either the report or other memoranda (see Doc. 5 at 2), there is no such right defined by § 541.17(c). Even if there were, the DHO adequately explained his reasons for not calling the

---

[4] 28 C.F.R. § 541.17(c) provides, in pertinent part, that, "The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO."

[5] 28 C.F.R. § 541.17(b) provides, in pertinent part, that "The Warden, the DHO or alternate DHO, the reporting officer, investigating officer, a witness to the incident, and UDC members involved in the case may not act as staff representative."

incident report writer in this case, Officer Anderson, in his DHO Report.

As to the final due process protection set forth in Wolff, Cardona was provided with a thorough written explanation of the DHO's decision, as well as the rationale for the decision, in the DHO Report, which was delivered to him on June 9, 2010. (See Doc. 4-1 at 13 § IX.)

It also is apparent that the DHO's decision was based upon the greater weight of the evidence as is required by Hill and 28 C.F.R. § 541.17(f). The DHO explained that he gave the greater weight of the evidence in this case to the eyewitness written account of the reporting officer, as well as the memoranda of Lieutenant Fleming and Officer Rodgers, and found Cardona's testimony that he was simply defending himself not to be credible. (Doc. 4-1 at 11-12, DHO Report, § V.) He explained his reasons for finding Cardona's testimony not to be credible as follows:

> First, the reporting officer clearly indicates that inmate Cardona initiated the incident by striking Manriquez-Ojeda with a closed fist to the head. Therefore, the DHO considers inmate Cardona's testimony that he was simply defending himself during the incident to be without merit. Moreover, a total of three staff eyewitnesses observed inmates Cardona and Manriquez-Ojeda striking each other with closed fists during the incident, which clearly constitutes the prohibited act of Fighting. Finally, DHO has considered inmate Cardona's testimony that he was 'forced' into the cell with Manriquez-Ojeda by staff, after allegedly being threatened by staff with 'corporal punishment', if he did not go into the cell. The DHO notes that the DHO's responsibility is to evaluate the evidence presented during a given hearing and determine whether there are some facts which support, or in a case where conflicting evidence exists, the greater weight of the evidence supports, the finding that any prohibited act was committed. The DHO informed Cardona that a DHO hearing is not the venue to raise allegations of staff misconduct. The Administrative Remedy Program, and other formal complaint procedures, exist for this purpose. The DHO notes that, although the DHO may consider Cardona's defense that he was 'forced' into the cell with Manriquez-Ojeda by way of some sort of alleged threat made against him by staff, the burden

> is upon Cardona to present some credible evidence (witness testimony or written statements from other inmates or staff members) supporting his allegations. Cardona cannot simply make such allegations, wholly unsupported, and then expect the DHO to conduct an investigation into the incident, which is clearly not the responsibility of the DHO. Further, the DHO notes that, regardless of Cardona's allegations, Cardona clearly initiated the fight by striking Manriquez-Ojeda with a closed fist to the head. Finally, when the DHO asked inmate Cardona why he and Manriquez-Ojeda could not be housed in the same cell together, Cardona declined to present testimony identifying a specific reason why the two inmates could not be placed in the same cell.
>
> The greater weight of the evidence in this case [ ] supports the finding inmate Cardona committed the prohibited act Code 201, Fighting.

(Id.) Cardona alleges in his reply brief that the DHO failed to consider his defense that he was forced into a staged gladiator type fight and that he was acting in self-defense (see Doc. 5 at 3), but it is clear from the above explanation that the DHO gave consideration to this defense and rejected it for the reasons he thoroughly explained. Because we conclude that Cardona was afforded all that due process requires in his disciplinary proceedings, the action against him was not arbitrary, and the DHO's decision was based on the greater weight of the evidence, see Hill, 472 U.S. at 457, 28 C.F.R. § 541.17(f), Cardona is not entitled to habeas relief, and the petition will be denied.

### B.  Cardona's Motions to Supplement

On January 19 and May 23, 2011, Cardona filed motions (Docs. 6, 7) seeking to supplement the petition based upon events that occurred after the petition became ripe, and which Cardona asserts are proof that staff at USP Lewisburg forced him into the cell with inmate Manriquez-Ojeda on the date of the fighting incident at issue in the petition.

11

In his first motion, Cardona states that he has discovered that Manriquez-Ojeda "had previously and recently assaulted his cellmate" and seeks to compel respondent to provide Manriquez-Ojeda's disciplinary history and gang affiliations because he claims that this information shows that Cardona was forced into the cell with Manriquez-Ojeda for a staged gladiator fight and shows that Cardona was defending himself. (Doc. 6 at 1-2.)

In his second motion, Cardona states that, on May 11, 2011, he witnessed an incident involving another inmate who was threatened by staff with corporal punishment if he did not enter a cell with another inmate, and Cardona seeks to supplement his petition by submitting what he identifies as an affidavit by this inmate[6] regarding the incident as evidence that Cardona was forced by staff into the cell with Manriquez-Ojeda over one year before, on March 15, 2010, for a staged gladiator type fight. (Doc. 7 at 1-2.)

Our review of a petition for writ of habeas corpus filed under the provisions of 28 U.S.C. § 2241 that challenges prison disciplinary proceedings is limited to a review of the record to determine whether the inmate was afforded the procedural requirements set forth in Wolff that are necessary to satisfy his right to due process. In addition, where the inmate challenges the sufficiency of the evidence supporting the DHO's decision, and there was conflicting evidence, we review the record to determine whether it demonstrates that the DHO's decision was based on the greater weight of the evidence. See Hill, 472 U.S. at 455; 28 C.F.R. § 541.17(c). Our

---

[6]The affidavit is in Cardona's handwriting and the inmate's name is printed on the signature line in handwriting that appears indistinguishable from Cardona's. (See Doc. 7 at 3-4.)

12

review is based upon the record as it existed at the time of the disciplinary proceedings. Thus, there would be no basis for this Court to consider new evidence or facts that were not part of the record before the DHO and that relate to events that occurred not only after the disciplinary proceedings in question, but after the instant petition became ripe. Therefore, we must deny Cardona's motions to supplement.

### III.   Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied, and Cardona's motions to supplement the petition also will be denied. An appropriate order follows.

BY THE COURT:

_____
JUDGE JAMES M. MUNLEY
United States District Court

Dated: July 6, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE CARDONA, | : | CIVIL NO. 4:CV-10-2269 |
| Petitioner, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| B.A. BLEDSOE, Warden, | : | |
| Respondent | : | |

## ORDER

AND NOW, this 6th day of July 2011, upon consideration of the petition for writ of habeas corpus (Doc. 1), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus (Doc. 1) is DENIED.

2. Petitioner's motions to supplement the petition (Docs. 6, 7) are DENIED.

3. The Clerk of Court is directed to CLOSE this case.

BY THE COURT:

_____
JUDGE JAMES M. MUNLEY
United States District Court